# Western Union Telegraph Co. v. Holland.

## Delay in Delivering Telegram.

(Decided November 10, 1914.  Rehearing denied December 15, 1914.
66 South. 926.)

1. *Telegraphs and Telephones; Delay in Delivery; Mental Suffer-ing; Remoteness.*—Where the husband had been seriously injured, and the wife telegraphed his father requested him to come at once, and the message was delayed, the wife could recover for mental suffer-ing from being deprived of his presence at such time; the fact that the husband's injury did not result in death during the time his father was delayed by the failure to get the message promptly, would not defeat such recovery.

2. *Same; Notice to Defendant.*—Where the agent of defendant who accepted the telegram from plaintiff was informed that plaintiff's husband was seriously ill, and that it was his father to whom the message was addressed, he was charged with notice that a failure to promptly transmit the message would be likely to cause mental dis-trust to the sender.

3. *Same; Evidence.*—Where defendant's agent was informed that plaintiff's husband had suffered a serious personal injury when he accepted the telegram requesting the husband's father to come at once, it was competent to show that the husband's parents knew his condition, and that the doctors had left it to him whether or not his injured member should be taken out of the plaster cast, and that plaintiff wanted the advice of the father about it, as bearing on the circumstance of the message; it was also competent to show the hus-band's suffering while awaiting the arrival of his father as well as that the husband's leg was afterwards amputated ˙when he grew worse, as bearing on the wife's anxiety to secure the presence of her father-in-law.

4. *Same; Jury Question.*—It was for the jury to say whether de-fendant's agent sent the message as quickly as he could, and whether the agent entrusted with the duty of discovering wire trouble was careful in the performance of such duty, under the evidence in this case.

5. *Same.*—It was not competent for the agents of defendant to state their conclusion as to whether they had promptly performed their duty in promptly forwarding the message.

6. *Same.*—Where there was no evidence that when defendant re-ceived the message, or before the addressee received it, the question of the amputation of the injured limb of plaintiff's husband had been considered, it was not admissible to show that the attending physi-cians wished to consult with the father and obtain his consent, and that of the wife.

[Western Union Telegraph Co. v. Holland.]

7. *Same; Notice to Sender.*—Where the agent was informed of the urgency of prompt delivery it was his duty to inform the sender of his inability to promptly transmit and deliver, if he could have communicated with the sender by the exercise of due diligence.

8. *Same.*—The evidence examined and held to furnish support for an inference that there was a negligent failure to notify the sender of inability to forward the message, and that by due diligence in inspecting the line, the delay could have been avoided.

9. *Same; Instruction.*—A charge asserting that it was a case of breach of a contract to deliver a telegram, and that plaintiff was only entitled to compensation for loss and injury sustained, and not to damages for loss or injury not proximately the result of the delay, or which were in contemplation of the parties when the contract was made, was misleading in submitting a count in tort as one for breach of contract, in the absence of explanatory instruction.

10. *Appeal and Error; Harmless Error; Evidence.*—Where the instructions by the court and those given for defendant stated that certain evidence was immaterial to plaintiff's right of recovery, or to her damages, the admission of such evidence was harmless.

11. *Same; Instructions.*—Where an agent did not know of wire troubles when he accepted a message, a charge dealing with a duty of notifying plaintiff of his inability to forward the message, although abstract was not error, as it asserted a correct legal proposition, and was not calculated to prejudice defendant.

12. *Charge of Court; Construction.*—The oral charge of the court should be construed as a whole, and if when so construed the part excepted to asserts a correct legal proposition, it will not work a reversal.

APPEAL from Tuscaloosa County Court.

Heard before Hon. A. H. ALSTON.

Action by Lena Holland against the Western Union Telegraph Company for damages for delay in delivery of telegram. Judgment for plaintiff, and defendant appeals. Affirmed.

The following charges were refused to defendant:

(1 and 2) Affirmative charge with hypothesis. (3) No more than nominal damages. (4) Recovery cannot exceed 25 cents, the amount paid for the telegram. (5) They should not award plaintiff any damages because of mental suffering or anxiety or distress. (6) Same as 5. (7) There can be no recovery in this case of punitive or exemplary damages, but only actual damages, that is, such as will compensate plaintiff for such pecuniary loss, if any, as she may have sustained by defend-

ant's failure to deliver to J. M. Holland promptly on February 22, 1913, the message referred to in the complaint and in the evidence. (8) There is no evidence in this case tending to show that the failure by defendant to deliver promptly the message in evidence was due to any negligence on the part of defendant or its agent. (12) I charge you that, so far as the failure to deliver promptly the message described in the complaint and introduced in evidence is concerned, if you believe the evidence in this case, the defendant has excused itself from any liability because of its having failed to deliver said message promptly in February 22, 1913. (13) Same as 12 down to and including the words, "February 22, 1913," and adds: And the only remaining question is whether the defendant or its agent upon finding that said message could not be promptly delivered should have informed plaintiff of that fact. The reason for so informing plaintiff in such a case is in order that you may be aware of the situation and adopt such other means of communicating with the sendee as may be available to her. And if you are reasonably satisfied from the evidence in this case that when defendant's agents who handled said message found that it could not be delivered promptly on February 22d, knew that the means which they had adopted, namely, United States mail, was the most expeditious means of conveying to J. M. Holland the contents of the message, and that if plaintiff had been then informed that said message had not and could not be delivered she could not by any other means reasonably in her power or obtainable by her have communicated with the said J. M. Holland earlier than by the means adopted by defendant's agents, and that by the means which they adopted the contents of the message were conveyed to him as early as plaintiff could have conveyed them by any other

means, then plaintiff is not entitled to recover any damages for mental anguish or distress, but only the amount paid for sending the message, with interest therein. (14) This is a case brought by plaintiff against defendant for a breach of contract; that is, a contract to deliver a telegraph message to J. M. Holland, at Kellerman, and the only thing plaintiff is entitled to recover is compensation for such loss and injuries as she had sustained, and she is not entitled to recover damages for any loss or injuries which did not naturally and proximately result from defendant's failure to deliver the message, or such as were in contemplation of both plaintiff and defendant at the time said contract was made; that is to say, at the time the message was delivered to defendant for transmission. (15) This is a case brought by plaintiff against defendant for breach of a contract; that is, a contract to deliver a telegraphic message to J. M. Holland at Kellerman. And the only thing plaintiff is entitled to recover is compensation for such loss and injuries as she may have sustained, and she is not entitled to recover damages for any loss or injury which did not naturally and proximately result from defendant's failure to deliver the message, or such as were in contemplation of both plaintiff and defendant at the time said contract was made; that is to say, at the time the message was delivered to defendant for transmission. And I charge you that the evidence does not show that there was in the contemplation of the parties at the time said contract was made any mental anguish or distress resulting to plaintiff from a failure to deliver promptly the message referred to.

In its oral charge, the court said:

"I charge you that, if Melvin knew that the line was not working beyond its place, it was the duty of the agent to have said to Mrs. Barnes, the agent of Mrs.

Holland, 'This telegram cannot be received with the understanding that it goes immediately out, as the lines are not working,' and that he should have given her that information."

The court said, after exception had been reserved:

"I will say between the point of receiving it, and its destination. If the jury find it was known up here, and if Melvin knew it, and of course the jury have to determine that. If Melvin did not know the line was not in operation, then, of course, he could not inform Mrs. Barnes."

FORNEY JOHNSTON, and HENRY A. JONES, for appellant. This was no death action, and no one was buried or suffered any physical pain by reason of the absence of the sendee, and it is respectfully submitted that plaintiff was not entitled to recover damages for mental anguish.—*W. U. T. Co. v. Ayers,* 131 Ala. 391. Based upon this authority, counsel insist that there were manifest errors in the rulings on the pleadings, the evidence, and the charges given and refused. On rehearing, counsel insist that the counts that went to the jury not sufficient in the averment of notice of the probable accrual of mental anguish to plaintiff, from a delay in the delivery of the message, and they cite.—*Sloss-S. S. & I. Co. v. Moore,* 59 South. 311; 4 Elliott on Contracts, sec. 2933; *C. of Ga. v. Joseph,* 125 Ala. 313; *Hall v. Haley, et al.,* 174 Ala. 190; 12 S. W. 949; *Pilcher v. C. of Ga.,* 155 Ala. 316. Nowhere does the relationship by affinity create the legal presumption of affection sufficient to form a basis for damages for mental anguish.—27 Cyc. 1065, and cases cited.

BROWN & WARD, for appellee. All the motions directed at the various parts of the complaint are based

on the theory that under the averments therein contained, plaintiff was not entitled to recover for mental suffering. This contention is disposed of by the following cases.—*W. U. T. Co. v. Bennett,* 57 South. 87; *Same v. Crocker,* 33 South. 45; *Same v. Northcutt,* 48 South. 552; *Same v. Snell,* 56 South. 854; *Same v. Sledge,* 62 South. 390; *Same v. Jackson,* 50 South. 316; *Same v. Burns,* 51 South. 373; *Same v. Rowell,* 45 South. 73; *Same v. Crumpton,* 36 South. 517; *Same v. Cunningham,* 14 South. 579. The first count is clearly one ex contractu.—Authorities, supra. In any event, reversible error cannot be predicated upon a refusal to strike.——*Davis v. L. & N.,* 108 Ala. 660; *B'ham T. & T. Co. v. Still,* 61 South. 611. Mental anguish was also recoverable under the second count, as that count seeks recovery of the price paid for the telegram.—Authorities, supra. There was sufficient notice to the agent of the necessity of prompt delivery.—*Anniston C. Co. v. W. U. T. Co.,* 49 South. 770; s. c. 59 South. 757; *W. U. T. Co. v. Russell,* 58 South. 938; *Same v. Brown,* 59 South. 329. On these authorities, there was no error in the admission of evidence, or in the charge of the court.

PER CURIAM.—The case went to the jury on the first and second counts of the complaint as it was last amended. The first count contained averments to the effect: That the defendant, in consideration of the payment to it by or for the plaintiff of the price of the message, to wit, 25 cents, or of the liability incurred by the plaintiff to pay that price, undertook to transmit and deliver the following message which the plaintiff delivered or caused to be delivered to it on the 22d day of February, 1913, at its office in Blocton, Ala.: "Blocton, Alabama, 2/22/1913. To J. M. Holland, Kellerman, Alabama. Come at once. Lena Holland." That

said J. M. Holland is plaintiff's father-in-law, and that his son, the plaintiff's husband, was then at his and the plaintiff's home in Blocton suffering from a severe personal injury he had received, and so continued for several days. That the defendant or its agent at Blocton who received the message at the time of such receipt knew or was informed that the palintiff's husband was seriously ill and that said message was being sent to his said father, J. M. Holland. That the defendant failed to transmit and deliver to said J. M. Holland said message promptly, as it should have done. That in consequence of such failure the plaintiff for a long time was deprived of the opportunity of having the comfort and consolation of the presence of her husband's father with her in her distress. And the count claimed damages for the alleged breach by the defendant of its said contract. The second count contained similar and other averments, and alleged the defendant's negligent and careless failure to perform special duties claimed to have been imposed upon it by said contract.

In several ways the defendant raised the question of the plaintiff's right to recover damages for mental suffering or distress. One contention is that the relation between the plaintiff, the person to whom the message was addressed, and the person whose condition occasioned the sending of it, was not such a one as would enable the former to mtaintain a claim to damages for mental suffering attributed to her being deprived of the opportunity of securing the personal presence of the person to whom the message was sent in the time of the plaintiff's trouble because of the serious personal injury from which her husband was suffering. In this connection the counsel for the appellant refer to the decision in the case of *Western Union Telegraph Co. v. Ayers,* 131 Ala. 391, 31 South. 78, 90 Am. St. Rep. 92. In that case it

was held that a father of a sick child was not entitled to recover such damages claimed to have been sustained as a result of the nondelivery of his telegram summoning his brother-in-law to the child's bedside. It was held that the relationship there disclosed was not shown to be such a close and affectionate one as to make applicable to the case the doctrine of recoverable damages on account of mental pain and suffering, as it was not presumable that the absence of the sender's brother-in-law could have added materially to the former's distress occasioned by his child's sickness and death. In the case at bar there was not a similar absence of support for such an inference. The relationship disclosed was by no means a remote one. Between the sender and the person for whom the message was intended it was as close as any relationship by affinity; and certainly there was no remoteness in the relationship of each of them to the person whose condition was the occasion of sending the message. Unless there is something exceptional in the relations existing between a wife and her husband and his father, it is but natural to suppose that a wife whose husband is the victim of a serious personal injury may desire the aid, comfort, and support to be expected from the personal presence of his father, and that she will be distressed at the failure to serve its purpose of a message asking him to come at once. Other rulings made since the one above mentioned plainly show that the limitation of the rule allowing the recovery of damages for mental suffering which was stated in the opinion in the case relied upon is not applicable to such a case as the one at bar.—*Western Union Telegraph Co. v. Crocker,* 135 Ala. 492, 33 South. 45, 59 L. R. A. 398; *Western Union Telegraph Co. v. Saunders,* 164 Ala. 234, 51 South. 176, 137 Am. St. Rep. 35; *Wes-*

*tern Union Telegraph Co. v. Bennett,* 3 Ala. App. 275, 57 South. 87.

Another contention is that such damages are not recoverable by the plaintiff because it is not made to appear that the death or burial of the husband occurred during the time his father's coming was delayed by his failure to get the message promptly. The right to recover such damages is not to be denied merely because the serious ailment of the person closely related to the sender and addressee of the message which occasioned the sending of it did not result fatally.—*Western Union Telegraph Co. v. Crumpton,* 138 Ala. 632, 36 South. 517. One may as well be distressed by the absence of another whose presence is felt to be needed for practical aid and support in time of serious sickness as by his absence after the fatal termination of such sickness has rendered impossible the enjoyment of the benefits from his presence which before were hoped for.—*Western Union Telegraph Co. v. Saunders,* 164 Ala. 234, 51 South. 176, 137 Am. St. Rep. 35.

Still another contention is that such damages were not recoverable because of the failure of the complaint to show by appropriate averments that when the alleged contract was entered into it was in the contemplation of the parties to it, or, at any rate, of one of them, the defendant, that such damages were likely to be sustained in consequence of a failure promptly to transmit and deliver the message. The averments of the complaint show that when the defendant's agent accepted the message for transmission and delivery he knew or was informed that the husband of the sender of it was seriously ill and that it was his father to whom the message was addressed. There is little plausibility in the suggestion that one whose receipt of such a message was accompanied by this information was without notice

[Western Union Telegraph Co. v. Holland.]

that the occasion for sending it was the serious sickness of one who was the husband of the sender and the son of the addressee, and that the latter was the father-in-law of the sender. In the light of this information, the words of the message "Come at once," gave notice to the defendant of the purpose it was intended to serve, and that unanticipated delay in the accomplishment of that purpose, due to a failure promptly to transmit and deliver the message, was likely to cause serious disappointment and mental distress to the sender. The complaint did not fail to make it appear that it must have been in the contemplation of the defendant when it accepted the message that its failure to transmit and deliver it promptly would probably entail such consequences.—*Western Union Telegraph Co. v. Anniston Cordage Co.,* 6 Ala. App. 351, 59 South. 757.; *Western Union Telegraph Co. v. Russell,* 4 Ala. App. 485, 58 South. 938; *Western Union Telegraph Co. v. Crumpton,* 138 Ala. 632, 36 South. 517.

The court did not err in overruling objections to the testimony of the plaintiff to the effect that prior to the time of sending the message one of her husband's legs had been broken, that at that time he was worse than he had been, that previously and since his injury his parents had been informed of his condition, "that the doctor had left it with them whether the leg should be taken out of the plaster cast," and that she wanted his father's advice about this. This testimony tended to prove the averments of the complaint as to the serious illness of the plaintiff's husband, and the circumstances of and occasion for her sending the message in question —of the general import and urgency of which the complaint showed that the defendant had notice—and the likelihood of the addressee's complying with the request made in the message promptly after its receipt by him.

Evidence as to the plaintiff's husband suffering in her presence on account of his broken leg while she was awaiting the coming of his father, which was delayed by the defendant's failure promptly to transmit and deliver the message, was relevant to an issue in the case, in that it tended to prove a fact or circumstance forming part of the support for an inference that the plaintiff, as alleged in the complaint, was subjected to mental distress in consequence of the alleged breaches of duty by the defendant which were complained of; and it was not improper to admit that evidence. The distress of the plaintiff could not well have been proved without showing the occasion or cause of it.

Evidence that plaintiff's husband's leg was amputated not long afterwards was of a circumstance indicating the gravity of the injury he had sustained and the plaintiff's anxiety, when he grew worse, to secure the presence of her father-in-law. This evidence also, in connection with that of other circumstances, tended to prove the effect upon the plaintiff of the failure of her message to accomplish its purpose promptly, and was properly admitted.

The defendant was afforded full opportunity to give its version of the cause of the delay in transmitting the message and of the efforts made to remove that cause by restoring its line between Tuscaloosa and Kellerman to such a condition that messages could be transmitted over it. It was for the jury to say from the evidence whether the agent at Blocton sent the message off as quickly as he could, and whether the agent to whom was intrusted the duty of discovering and remedying troubles with the wire which interfered with the use of it for transmitting messages was duly careful in the performance of that duty; and it was not error for the court to refuse to permit these agents, as witnesses

[Western Union Telegraph Co. v. Holland.]

for the defendant, to state their respective conclusions on these points.

The evidence introduced by the defendant tended to prove that when its agent at Blocton ascertained that, because of some trouble with the line between Tuscaloosa, the relay station, and Kellerman, the message could not be telegraphed to its destination on the day of its receipt, he mailed it that day, Saturday, with the result that it reached Kellerman on Monday morning and was then delivered to the addressee, who left for Blocton on the first train thereafter. One of the defendant's breaches of duty which was charged in the second count was its alleged negligent failure to inform plaintiff of its inability to transmit and deliver the message promptly. Plaintiff was not so informed on the day the message was sent, or on the next day, and there was evidence tending to prove that by other available means she could have gotten the message to her father-in-law about 36 hours sooner than he received it from the defendant. If, as there was evidence tending to prove, the defendant's agent at Blocton was informed when he received the message of the urgency for prompt service with reference to it, the plaintiff, if, as there was evidence tending to prove, she could, by the exercise of due diligence, have been communicated with after the agent at Blocton ascertained the fact, should have been informed of the inability of the defendant promptly to transmit and deliver it.—*Western Union Telegraph Co. v. Hill*, 163 Ala. 18, 50 South. 248, 23 L. R. A. (N. S.) 648, 19 Ann. Cas. 1058; *Fleischner v. Pacific Postal Telegraph Cable Co.* (C. C.) 55 Fed. 738.

An exception was reserved to the following statement made in the oral charge to the jury:

"The physician or physicians attending him wished to consult with Mr. Holland's father about the condi-

tion of Arthur Holland, and obtain the consent of the father and wife to have the leg amputated."

It is pointed out that there was no testimony to the effect that when the message was received by the defendant, or before the addressee reached Blocton, the question of amputation was under consideration, or that any physician desired at that time to consult with any one on that subject. According to the testimony, it was not till afterwards that the question of amputation was suggested. So it must be conceded that the subject of this exception was a misstatement of the evidence. But we are not of opinion that the making of that misstatement was an error which requires a reversal of the judgment. The instructions contained in the oral charge and those given in written charges requested by the defendant, in stating the facts required to be found by the jury to entitle them to render a verdict in favor of the plaintiff, and the grounds upon which damages could be awarded, made it plain that the wishes of the physician or physicians as to consulting any one, and a postponement of the gratification of such wishes, could cut no figure in the plaintiff's asserted right of recovery or in the assessment of damages to her. In the light of the instructions given, it cannot be supposed that the jury were influenced in their finding by the misstatement mentioned or that the defendant was prejudiced thereby. Without disobeying instructions, the jury could not, in finding for the plaintiff or in determining the amount of damages to be awarded, have been misled to their conclusions by that which the court mistakenly stated as a fact disclosed by the evidence.

An exception was reserved to a part of the oral charge which dealt with the question of the duty of the defendant's agent at Blocton as to giving notice of his inability to get the message to its destination by wire. The

only fault to be found with that statement is that it was abstract, as the evidence did not show that that agent knew of the trouble when he accepted the message. The giving of an abstract instruction which asserts a correct legal proposition is not a ground for a reversal, unless, because of the character of the instruction and the circumstances of the case, it is calculated to prejudice the party excepting.—*Shelton v. State,* 144 Ala. 106, 42 South. 30. That the defendant was not prejudiced by the statement excepted to we think is manifest in view of the fact that when the exception was reserved the court made a statement which plainly showed that it was for the jury to say from the evidence when the agent learned of the trouble on the line, and added that if he did not know that the line was not in operation he could not inform the plaintiff's agent from whom he received the message.

It is only by disassociating from the rest of the oral charge the other parts of it to which exceptions were reserved that those parts of the charge can be made the subjects of the criticism aimed at them by the counsel for the appellant. The charge read as a whole, as it should be, could not have left the jury under the impression that they were authorized to render a verdict in favor of the plaintiff unless they found from the evidence that the defendant breached a duty as alleged in the complaint, and that the plaintiff sustained damage from such breach of duty, or that any damages could be awarded except such as the evidence showed that the plaintiff sustained in consequence of a breach of duty alleged and proved.

It cannot be said that there was an absence of evidence of negligence for which the defendant was responsible and which contributed to the plaintiff's failure to get her message to its destination promptly. On

Friday, the day before the message was received for transmission, it was known to the defendant's lineman who looked after its wires out of Tuscaloosa that the line between that place and Kellerman was out of order and that communication between those points was interrupted. He left Tuscaloosa by train on Friday morning, and about 14 miles from Tuscaloosa found a tree fallen across the line. After removing the tree and putting the wire in order at that point, without inspecting the line beyond it, he returned to Tuscaloosa and found that communication with Kellerman was still interrupted. On a trip made the next day along the line, he found and remedied another wire trouble at a point beyond the one at which on the day before a tree was found across the line. The evidence furnished support for the inferences that there was a negligent failure to notify the plaintiff of the defendant's inability to telegraph the message, and that, if there had been due diligence in making a prompt and proper inspection of the line after the inability to get messages over it was disclosed, both the causes of the interruption of its use could have been discovered and remedied sooner, with the result that much of the delay in getting the message to its destination could have been avoided.

There was evidence tending to prove the material averments of each of the counts of the complaint upon which the case went to the jury. This statement, in connection with what already has been said, sufficiently indicates the grounds upon which may be rested the conclusions that the court was not in error in refusing to give written charges 1, 2, 3, 4, 5, 6, 7, 8, 12, 13, and 15 requested by the defendant.

Refused charge 14 was inaccurate in stating in effect that the case submitted to the jury was one for a breach of contract. The second count was in tort, for the al-

[Carden v. Louisville & Nashville R. R. Co.]

leged breach by the defendant of duties arising out of a contract. Besides, in view of the issues raised as to the right of the plaintiff to recover damages for mental suffering or distress, some of the expressions used in that charge were calculated to mislead the jury unless accompanied by explanatory instructions. These faults in the charge justified the court's refusal to give it, whether it was or was not otherwise faulty.

In view of the state of facts which there was evidence tending to prove, there is nothing in the amount of the verdict to indicate that it was the result of passion, prejudice, or other improper influence operating upon the jury. It is not made to appear that the court was in error in overruling the defendant's motion to set aside the verdict and grant a new trial.

No reversible error has been found in the record.

Affirmed.

NOTE.—The foregoing opinion was prepared by WALKER, P. J., before his retirement from the Court of Appeals, and has been adopted by the court.


